UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MSPA CLAIMS 1, LLC, a Florida Limited Liability
Company, MSP RECOVERY CLAIMS, SERIES
LLC, a Delaware entity, and SERIES 16-05-456, a
series of MSP RECOVERY CLAIMS, SERIES LLC,

      Plaintiffs,

v.                           Case No. _____

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a Florida profit
corporation,

      Defendant.

_____/

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant State Farm Mutual Automobile Insurance Company ("State Farm") hereby removes to this Court the state court action described below pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. This Court has jurisdiction over said action on the basis of (i) the Class Action Fairness Act ("CAFA") and (ii) federal question jurisdiction. In support of this Notice of Removal, State Farm states the following:

## BACKGROUND

1.     This is a putative class action pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, styled *MSPA Claims 1, LLC v. State Farm Mutual Automobile Insurance Co.* (Case No. 2015-17104-CA-01). Over a series of amendments, Plaintiffs have transformed this case from a $15,000 County Court action into a substantial class action that raises significant federal questions and satisfies the jurisdictional requirements of CAFA.

2.      This action was originally commenced by MSP Recovery, LLC[1] in County Court in Miami-Dade County, Florida on December 22, 2014.  *See* Complaint, *MSP Recovery, LLC v. State Farm Mut. Auto. Ins. Co.*, Case No. 2014-16131-CC-25.[2]  The County Court complaint asserted an individual claim against State Farm under the Medicare Secondary Payer Act ("MSP Act") for damages, alleging that, as a primary plan under the MSP Act, State Farm had failed to reimburse MSP Recovery, LLC's assignee, Florida Healthcare Plus ("FHCP"), for medical bills incurred by a State Farm insured (referenced as M.M.) that FHCP had paid conditionally.  *See generally id.*  The County Court complaint averred that it was "an action for damages less than Fifteen Thousand Dollars ($15,000.00), exclusive of interests, costs, and attorney's fees."  *Id.* ¶ 1.  Due to the inconsequential amount in controversy, State Farm answered the County Court complaint, and the case proceeded in County Court.

3.      On February 20, 2015, MSP Recovery, LLC filed an Amended Complaint in County Court.[3]  The Amended Complaint continued to aver that this was "an action for damages less than Fifteen Thousand Dollars ($15,000.00), exclusive of interests, costs, and attorney's fees"  *Id.* ¶ 1.  The Amended Complaint kept its claims largely the same, but added new facts regarding the assignment of "recovery and/or reimbursement rights" on which plaintiff MSP Recovery, LLC relied for standing, alleging that FHCP assigned such rights to La Ley Recovery, which in turn assigned them to MSP Recovery, LLC.  *Id.* ¶¶ 5-6.

---

[1] The entity "MSP Recovery, LLC" was subsequently substituted with MSPA Claims 1, LLC and is no longer a Plaintiff in this action.

[2] A copy of the County Court complaint can be found in Composite Exhibit A at pages 1-29.

[3] A copy of the Amended Complaint filed in County Court can be found in Composite Exhibit A at pages 37-58.

4.      Neither the original Complaint nor the Amended Complaint contained any class-action allegations.

5.      On May 29, 2015, MSP Recovery, LLC moved to transfer the case to Circuit Court on the basis that its request for damages exceeded the County Court's jurisdictional limit. The motion was granted on July 10, 2015, and the case was opened in Circuit Court in Miami-Dade County as Case No. 2015-17104-CA-01.[4]

6.      On February 16, 2016, MSPA Claims 1, LLC was substituted for MSP Recovery, LLC as Plaintiff.

7.      More than a year after the case had been filed in County Court, Plaintiff MSPA Claims 1, LLC amended its complaint on March 16, 2016 to assert class-action claims.[5]

8.      In its Amended Class Action Complaint for Damages, Plaintiff MSPA Claims 1, LLC considerably altered the nature of its action against State Farm.  Dropping its MSP Act claim, MSPA Claims 1, LLC asserted four state-law claims for breach of contract and subrogation against State Farm.  *See generally id.* ¶¶ 75-104.  The plaintiff sought to represent a class of 25-50 entities, or their assignees, that "contracted directly with" the Centers for Medicare & Medicaid Services ("CMS") to provide Medicare benefits through a Medicare Advantage plan and that have "made payment(s) of benefits . . . as a secondary payer . . . for which the [State Farm], as primary payer . . . , was/is financially responsible . . . ." *Id.* ¶¶ 55, 66. The Amended Class Action Complaint for Damages expressly sought to recover only the $10,000 maximum benefit under Florida's no-fault insurance laws for the representative claimant

---

[4] A copy of the court's order granting MSP Recovery, LLC's motion to transfer can be found in Composite Exhibit A at pages 59-60.

[5] A copy of the March 16, 2016 Amended Class Action Complaint for Damages can be found in Composite Exhibit A at pages 65-89.  The conversion of the case into a class action required State Farm to retain counsel familiar with complex litigation.

and for each Medicare beneficiary for whom MSPA Claims 1, LLC's assignor, FHCP, made payment as a secondary payer, and alleged that the total damages sought did not exceed $75,000.00.  *Id.* ¶¶ 1, 24 n.3.  State Farm could not remove the Amended Class Action Complaint because the CAFA requirement that there be 100 or more putative class members was not satisfied and there was no federal question alleged.  *See id.* ¶ 66 & Exh. F thereto.

9.      On September 12, 2016, MSPA Claims 1, LLC filed its Third Amended Class Action Complaint for Damages in Circuit Court, which made various revisions to the pleading's allegations regarding standing and the relationship between the Plaintiff and its assignors. *Compare* Amended Class Action Complaint ¶¶ 38-54 *with* Third Amended Class Action Complaint ¶¶ 38-68.[6]  Like the previous class-action complaint, this pleading asserted only state-law causes of action for breach of contract and subrogation (*see id.* ¶¶ 89-111), and expressly alleged that "[n]o individual recovery exceeds" $10,000.00 and that the assignor's "aggregate claims against [State Farm] do not exceed" $75,000.00.  *Id.* ¶ 1.  Plaintiff MSPA Claims 1, LLC continued to seek to represent a class of 25-50 entities, or their assignees, that "contracted directly with CMS . . . to provide Medicare benefits through a Medicare Advantage plan" and that have "made payment(s) of benefits . . . as a secondary payer . . . for which the [State Farm], as primary payer . . . , was/is financially responsible . . . ."  *Id.* ¶¶ 69, 80.  As with the previous class-action complaint, State Farm could not remove the Third Amended Class Action Complaint because the CAFA requirement that there be 100 or more putative class members was not satisfied and there was no federal question alleged.  *See id.* ¶¶ 80 & Exh. B thereto.

---

[6] A copy of the September 12, 2016 Third Amended Class Action Complaint can be found in Composite Exhibit A at pages 94-204.

10.     The nature and scope of this action drastically and substantially changed, however, on July 5, 2018 when Plaintiff filed its Fourth Amended Class Action Complaint for Damages ("Fourth Amended Complaint" or "FAC").[7]

11.     The Fourth Amended Complaint added two new Plaintiffs in addition to MPSA Claims 1, LLC:  MSP Recovery Claims, Series LLC and Series 16-05-456, a Series of MSP Recovery Claims, Series LLC.  *Id.* ¶¶ 28-31.  The Fourth Amended Complaint also expanded the representative claims from one to four, adding new allegations regarding three Medicare beneficiaries—P.K., E.C., and M.P.—who were also insured under State Farm no-fault insurance policies and for whom Plaintiffs' assignees made conditional payments for their accident-related medical expenses that State Farm allegedly failed to reimburse.  *See id.* ¶¶ 12-26.  In addition, the Plaintiffs' alleged standing to sue State Farm is premised on three representative "assignment agreements," which Plaintiffs contend assigned to them "any and all rights to recover conditional payments made on behalf of Assignors' health plan members and Enrollees, including those who were insured by" State Farm.  *Id.* ¶¶ 35-48.  Two of the representative assignors are new to the Fourth Amended Complaint:   Health First Health Plans, Inc. ("through its administrator Administrative Plans, Inc."),  and Interamerican Medical Center Group, LLC ("IMC").  Finally, the Fourth Amended Complaint omits the state-law claims for breach of contract and subrogation asserted in Plaintiffs' prior pleadings, and replaces them with a federal claim against State Farm for damages under the MSP Act.  *See id.* ¶¶ 105-20.

12.     The Fourth Amended Complaint also revises and substantially broadens the proposed class definition to include not only entities, or their assignees, that "contracted directly with" CMS (such as Medicare Advantage Organizations or "MAOs"), but first-tier and

---

[7] A copy of the Fourth Amended Complaint is attached hereto as Exhibit B.

downstream entities as well. *See id.* ¶¶ 72-78; *infra* ¶ 27 (defining first-tier and downstream entities). As a result of the amendments, the proposed class exceeded, for the first time, 100 putative members. *See id.* ¶ 76. The Fourth Amended Complaint contains no limitations on the alleged amount in controversy, does not limit any individual claim to the $10,000 maximum benefit under Florida's no-fault insurance laws, and seeks a substantial amount of damages in connection with each representative claim and on behalf of the putative class.

13.     Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Venue in this Court is proper under 28 U.S.C. § 1441(a) and Local Rule 3.1 because (i) this action is being removed from the state court in which it was originally filed, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, which sits within the Southern District of Florida, and (ii) the Fourth Amended Complaint alleges that the cause of action accrued in Miami-Dade County, Florida. *See* FAC ¶ 33.

### GROUNDS FOR REMOVAL

## I.     THIS COURT HAS JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT ("CAFA").

14.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d), the codification of CAFA.

15.     CAFA confers jurisdiction on federal district courts over class actions in which (1) any plaintiff class member is diverse in citizenship from any defendant; (2) there are at least 100 proposed plaintiff class members; and (3) the aggregate amount in controversy exceeds

$5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446.

16.     As a threshold matter, this action is a proposed "class action" as defined by CAFA because it is a case brought by a representative of a putative class and was filed in state court pursuant to a statute or rule authorizing such a class. *See* 28 U.S.C. § 1332(d)(1)(B).[8] Specifically, Plaintiffs bring their claims under Florida Rule of Civil Procedure 1.220, which authorizes class actions, and represent that they bring this lawsuit against State Farm "on their own behalf and on behalf of all Class members or their assignees operating in Florida." FAC ¶ 73. The Plaintiffs "seek class certification of the claims alleged in this action and judgment for damages for themselves and the class members." *Id.*

17.     As demonstrated below, all of the remaining requirements for CAFA jurisdiction are satisfied here. Moreover, to the extent there is any doubt whether the CAFA requirements are met, it is clear from both Supreme Court precedent and CAFA's legislative history that such doubts should be resolved in favor of federal jurisdiction. *See, e.g.*, *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (stating that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); S. Rep. 109-14, at 43 (2005) ("Overall, [CAFA] is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *id.* at 35 (explaining that the intent of CAFA "is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications").

---

[8] "[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.*

Indeed, the Eleventh Circuit has recognized that, in light of the Supreme Court's holding in *Dart*, courts "may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014).

### A. CAFA's Diversity-of-Citizenship Requirement Is Satisfied.

18.     Under CAFA, the required diversity of citizenship is satisfied so long as there is "minimal diversity," which exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (stating that "[u]nder CAFA, federal courts now have original jurisdiction over class actions in which . . . there is minimal diversity (at least one plaintiff and one defendant are from different states)"). Here, there is complete diversity.

19.     Plaintiff MSPA Claims 1, LLC is a limited liability company, organized under Florida law, with its principal place of business in Miami-Dade County, Florida. FAC ¶ 28. Thus, under CAFA, Plaintiff MSPA Claims 1, LLC is a citizen of Florida.[9]

20.     Plaintiff MSP Recovery Claims, Series LLC "is a Delaware series limited liability company with its principal place of business" in Miami-Dade County, Florida. FAC ¶¶ 29-31. Thus, under CAFA, Plaintiff MSP Recovery Claims, Series LLC is a citizen of both Delaware and Florida.

21.     Plaintiff Series 16-05-456, is a series of MSP Recovery Claims, Series LLC, and has its principal place of business in Miami-Dade County, Florida. *Id.* ¶ 31.

---

[9] Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). For purposes of CAFA, a limited liability company is considered to be an "unincorporated association." *See Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010); *see also O'Shaughnessy v. Cypress Media, L.L.C.*, 2014 WL 1791065, at *4 (W.D. Mo. May 6, 2014) (same).

22.     State Farm is a mutual insurance company organized and incorporated under the insurance laws of the State of Illinois.  State Farm's principal place of business is the State of Illinois.  *See* Declaration of Kristy Stapleton, ¶ 3, attached hereto as Exhibit C.  Therefore, State Farm is a citizen of Illinois.  *See* 28 U.S.C. § 1332(c)(1).

23.     In light of the Plaintiffs' Florida and Delaware citizenships and State Farm's Illinois citizenship, CAFA's minimal diversity requirement is satisfied.   *See* 28 U.S.C. § 1332(d)(2).

**B.     The Putative Class Consists Of More Than 100 Members.**

24.     Although State Farm does not concede that Plaintiffs have defined a proper class or that a class can be defined or maintained, Plaintiffs' class definition in the Fourth Amended Complaint makes clear that the proposed class would include at least 100 members, thus satisfying the requirement of 28 U.S.C. § 1332(d)(5)(B).

25.     Plaintiffs assert a broadly defined class of non-governmental organizations or their assignees that provide benefits under Medicare Part C in the State of Florida.  Plaintiffs define the putative class as follows:

> All non-governmental organizations (including, but not limited to MAOs, first-tier entities, and downstream entities) or their assignees, that provide benefits under Medicare Part C in Florida and made conditional payments for the accident-related medical expenses of Enrollees within the applicable limitations period (the "Class Period"), for which the defendant had provided no-fault insurance coverage, but failed to make primary payment or full reimbursement.  This class definition excludes (a) defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

FAC ¶ 78.

26.     Under Medicare Part C, Medicare beneficiaries may elect to receive Medicare benefits through private insurers, including Medicare Advantage Organizations ("MAOs").  *See* 42 U.S.C. § 1395w-21.  According to Plaintiffs' allegations, there are at least 37 MAOs who

contracted with CMS to "provide benefits under Medicare Part C in Florida." *See* FAC ¶ 80; Composite Exhibit A at pp. 202-04 (Exh. F to 3d Am. Compl.); Composite Exhibit A at pp. 88-89 (Exh. B. to Am. Class Action Compl.).

27.     Plaintiffs' expanded proposed class definition in the Fourth Amended Complaint, however, is not limited to MAOs.  For the first time, it also includes other "non-governmental entities," such as first-tier and downstream entities.  FAC ¶¶ 74, 76.  First-tier entities are defined as "any party that enters into an acceptable written arrangement with [a Medicare Advantage] organization or contract applicant to provide administrative services or health care services for a Medicare eligible individual."  42 C.F.R. § 422.500(b); *see also* FAC ¶ 73.  Downstream entities are defined as "any party that enters into an acceptable written arrangement below the level of the arrangement between [a Medicare Advantage] organization (or contract applicant) and a first tier entity."  42 C.F.R. § 422.500(b); *see also* FAC ¶ 74.[10]  According to Plaintiffs' own allegations, the putative class—for the first time—includes "***hundreds*** of first-tier and downstream entities (and their assigns)," in addition to at least 37 MAOs.  FAC ¶ 76 (emphasis added).

28.     Although State Farm does not concede the propriety or breadth of the class as alleged by Plaintiffs, because Plaintiffs' proposed class definition includes at least 37 MAOs that contracted with CMS to provide benefits under Medicare Part C and "hundreds of first-tier and downstream entities (and their assigns)" (*id.* ¶ 76), it is clear that the proposed class would include at least 100 members, satisfying CAFA's numerosity requirement.  *See Murray v. Midland Funding, LLC*, 2015 WL 3874635, at *2 (D. Md. June 23, 2015) (finding that CAFA

---

[10]     According to the FAC, "[f]irst-tier and downstream entities administer and provide Medicare services to Medicare beneficiaries who are MAO Enrollees.  The first-tier and downstream entities bear the full risk of loss because of their contractual obligations with MAOs."  FAC ¶ 75.

jurisdiction existed where, among other things, the "complaint adequately allege[d] numerosity to permit a conclusion that the total plaintiff class members easily exceed 100 in number"); *Murray v. DirecTV, Inc.*, 2013 WL 12131736, at *2 (C.D. Cal. July 23, 2013) (finding that the numerosity requirement was satisfied because the complaint alleged that "more than 57,000 persons" were putative class members and, thus, "it [wa]s apparent on the face of the [complaint] that there [we]re over 100 putative class members").

       **C.**     **CAFA's Amount-In-Controversy Requirement Is Satisfied.**

      29.     Under CAFA, the claims of the individual, putative class members are aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs. *See* 28 U.S.C. § 1332(d)(6). The amount in controversy is not the amount the plaintiffs are likely to recover, but rather "'an estimate of the amount that will be put at issue in the course of the litigation.'" *Dudley*, 778 F.3d at 913 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554; *see also Pretka*, 608 F.3d at 754 ("[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.").

      30.     Although State Farm believes that it will establish that it does not have any liability to Plaintiffs or to any putative class member, it is clear from the Fourth Amended Complaint and Plaintiffs' class definition that the amount in controversy exceeds $5,000,000.

      31.     Plaintiffs' allegations relate to accident-related medical expenses that were conditionally paid by MAOs, first-tier entities, and downstream entities to Medicare beneficiaries, who were insured under State Farm no-fault insurance policies. FAC ¶¶ 1-7.

Plaintiffs seek "double damages under the [Medicare Secondary Payer] Act for [State Farm's alleged] failure to properly reimburse conditional payments for [those Medicare beneficiaries'] accident-related medical expenses within the applicable limitations period." *Id.* ¶ 7.

32.     Plaintiffs identify four "representative claims" in the Fourth Amended Complaint. Plaintiffs contend that M.M. is a Medicare beneficiary enrolled in a Medicare Advantage plan managed by one of "the MSP Plaintiffs' Assignors." FAC ¶ 10. Plaintiffs allege that M.M. was a State Farm insured at the time M.M. incurred accident-related medical expenses, and that State Farm, as the primary payer under the MSP Act, failed to pay M.M.'s expenses or to reimburse one of Plaintiffs' assignors for the conditional payment of those expenses. *Id.* ¶¶ 10-11. According to the Fourth Amended Complaint, State Farm "owes the MSP Plaintiffs at least $14,918.00 for M.M.'s accident-related medical expenses." *Id.* ¶ 11. Plaintiffs allege similar facts with respect to the representative claims of P.K., E.C., and M.P. (*see id.* ¶¶ 12-23), concluding that State Farm "owes the MSP Plaintiffs at least $410,271.03 for P.K.'s accident-related medical expenses" (*id.* ¶ 15), "at least $57,569.90 for E.C.'s accident-related medical expenses" (*id.* ¶ 19), and "at least $39,321.00 for M.P.'s accident-related medical expenses" (*id.* ¶ 23). Just on those four ***representative*** claims alone, and in light of Plaintiffs' claim for double damages under the MSP Act,[11] Plaintiffs' allegations place the amount in controversy at a minimum of $1,044,159.86 ($522,079.93 multiplied by 2).

33.     But given Plaintiffs' allegations that State Farm's failure to fulfill its obligation as a primary payer was "systemic" and "systematic" and that the four representative claims "constitute only a small fraction of the conditional payments for which [State Farm] failed to

---

[11] *See* FAC at Prayer for Relief, ¶ (c)(1).

reimburse the MSP Plaintiffs and the Class Members" (FAC ¶¶ 1, 8, 26 n.5), it is reasonable to conclude that the aggregate amount in controversy for the putative class is substantially higher.

34.     Indeed, based on the damages sought by Plaintiffs on the four representative claims, the ***average*** amount of damages sought per claimant, including double damages, is $261,039.97.  Applying that ***average***, if each of the 37 putative MAO class members has only one outstanding or unreimbursed claim for a State Farm insured, then the amount in controversy reaches $9,659,478.89 (including double damages)—well above the $5,000,000 threshold for CAFA.

35.     In addition to the putative MAO class members, as noted, Plaintiffs allege for the first time that there are "***hundreds***" of first-tier and downstream entities included within the putative class and that those entities have also incurred damages.  FAC ¶¶ 74-76 (emphasis added).  Inclusion of their claims would increase the amount in controversy even further above $5,000,000.  *See Cappuccitti v. DiNecTV, Inc.*, 623 F.3d 1118, 1122-23 n.7 (11th Cir. 2010) (using "simple arithmetic" to conclude that the complaint's allegations satisfied CAFA's jurisdictional requirements); *see also Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (noting that "a removing defendant is somewhat constrained by the plaintiff" and explaining it is appropriate for defendant's allegations as to the amount in controversy to rely on "reasonable estimates, inferences, and deductions").

36.     Moreover, Plaintiffs allege that there are "more than 5,700 instances where defendant (or one of its affiliates) reported to CMS its responsibility to pay for insureds' accident-related medical expenses but may have paid nothing and failed to reimburse the MSP Plaintiffs or their Assignors for the Assignors' conditional payments."  FAC ¶ 26.  Thus, the aggregate amount in controversy would be increased substantially by each of the "hundreds of"

MAO, first-tier entity, and downstream entity class members having paid out more than one single claim.

37. Plaintiffs do not limit their damages claims in the Fourth Amended Complaint to the maximum amount allowed for a single claim ($10,000) under Florida's no-fault insurance laws. Even if there is a possibility that members of the putative class "might not ultimately recover the full" amount in controversy implicated by the Fourth Amended Complaint's allegations, "that possibility does not shut the door on federal jurisdiction." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1318 (11th Cir. 2014). Instead, "the pertinent question [at the jurisdictional stage] is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Id.* (citations and internal quotation marks omitted; emphasis in original).

38. Nonetheless, even if the Court evaluated only the maximum $10,000 no-fault benefit in determining the aggregate amount in controversy, it would still exceed the $5,000,000 threshold for CAFA. For instance, conservatively assuming there were 200 class members[12] and each have two unreimbursed claims[13] valued at $10,000, then the aggregate amount in controversy would reach $8,000,000 (including double damages).

39. Plaintiffs' allegations thus demonstrate that the aggregated value of the "claims of the individual class members . . . exceed the sum or value of $5,000,000.00." 28 U.S.C. § 1332(d)(2).

---

[12] Plaintiffs allege there are "hundreds." FAC ¶¶ 74-76.

[13] Plaintiffs allege that, while there are only "hundreds" of putative class members, there are "more than 5,700 instances where defendant (or one of its affiliates) reported to CMS its responsibility to pay for insureds' accident-related medical expenses but may have paid nothing and failed to reimburse the MSP Plaintiffs or their Assignors for the Assignors' conditional payments." FAC ¶ 26. These allegations indicate that each putative class member will have conditionally paid more than one claim relative to a State Farm insured.

D.      **None of CAFA's Exceptions Apply.**

40.      CAFA sets forth two mandatory exceptions and one discretionary exception to the application of federal jurisdiction, all of which require that the primary defendants be citizens of the state in which the action is originally filed.  *See* 28 U.S.C. § 1332(d)(3)-(4).  None of those exceptions apply here because the only named defendant, State Farm, is a citizen of Illinois—not Florida.  *See id.* § 1332(c)(1); Exhibit C.

## II.      THIS COURT ALSO HAS FEDERAL QUESTION JURISDICTION.

41.      This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

42.      Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  "A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that *federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law*.'"  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983); emphasis added).  Even where (unlike here) a plaintiff has couched its complaint *entirely* in terms of state law, a federal court still has jurisdiction if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).  Federal jurisdiction is, thus, appropriate where the result depends on the resolution of "a dispute or controversy respecting the validity, construction, or effect" of federal law.  *Dunlap v. G&L*

*Holding Grp. Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting *Mobil Oil Corp. v. Coastal Petro. Co.*, 671 F.2d 419, 422 (11th Cir. 1982)).

43.     "The existence of federal jurisdiction is tested as of the time of removal." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011). Jurisdiction is determined by looking at the face of the plaintiff's complaint at the time of removal. *Id.*

44.     It is clear from the face of the Fourth Amended Complaint that Plaintiffs' causes of action are created by federal law and that Plaintiffs' claims depend on resolution of substantial questions of federal law that will be dispositive of the case.

45.     Plaintiffs' claims and the allegations of the Fourth Amended Complaint center on, and arise from, the federal Medicare Secondary Payer Act. *See, e.g.*, FAC ¶¶ 1-7, 45-72. Indeed, Plaintiffs expressly allege that "[t]his lawsuit is brought under the Act's private right of action by the MSP Plaintiffs . . . on behalf of a Class of similarly situated Medicare Payers and their assignees." FAC ¶ 6.[14] Plaintiffs' claims for damages are premised on their allegation that "defendant failed to reimburse the Assignors and Class Members, as required by the [Medicare Secondary Payer] Act." *Id.* Moreover, the Fourth Amended Complaint unambiguously raises federal issues appropriate for resolution in federal court: "This lawsuit advances the interests of the MSP Act and Medicare because when Medicare Payers recover conditional payments[,] they 'spend less on providing coverage for their enrollees' and the 'Medicare Trust Fund . . . achieve[s] cost savings." *Id.* ¶ 7 (citation omitted).

46.     Count I is a private cause of action under § 1395y(b)(3)(A) of the MSP Act. *See* FAC ¶¶ 105-15. As the Fourth Amended Complaint alleges, the MSP Act establishes a private cause of action for double damages "in the case of a primary plan which fails to provide for

---

[14] The previous complaint, which was amended by the Fourth Amended Complaint, did not raise a federal cause of action. *See supra* ¶ 9.

primary payment (or appropriate reimbursement) in accordance with" the Act.  *Humana Med.*

*Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234-35 (11th Cir. 2016) (citing 42 U.S.C. §

1395y(b)(3)(A)).   The private cause of action is available to a Medicare beneficiary whose

primary plan has not paid Medicare or the beneficiary's healthcare provider."  *Id.*  In construing

§ 1395y(b)(3)(A), courts have extended the statute's private cause of action to MAOs and

healthcare providers who have not been reimbursed by a primary plan.  *Id.* at 1238.

  47. Plaintiffs expressly, and unambiguously, invoke § 1395y(b)(3)(A)'s private cause

of action in Count I.  *See* FAC ¶ 106 ("The MSP Plaintiffs assert a private cause of action under

to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and a Class of similarly-situated

Medicare Payers.").   Because the Fourth Amended Complaint includes a recognized claim

created by federal statute, this Court is vested with federal question jurisdiction to resolve it.

  48. Although entitled "Breach of Contract for Failure to Pay PIP Benefits," Count II

similarly raises a substantial question of federal law under the MSP Act, 42 U.S.C. § 1395y, and

its implementing regulations.  Count II purports to assert a breach of contract claim, alleging that

State Farm breached its insurance contracts with its insureds when it "failed to pay the accident-

related medical expenses of its insureds who were also Enrollees [in Medicare Part C].  FAC ¶

114.  Count II alleges that—pursuant to federal Medicare regulations—MAOs are subrogated to

the insureds' rights to recover from State Farm for such breach.  *Id.* ¶ 113 (citing 42 C.F.R. §

411.26).[15]   Under the referenced regulations, the United States is entitled to be subrogated to a

---

[15] Although other courts in this district have remanded actions asserting claims arising under Florida Statutes § 627.736, which governs Florida no-fault benefits, Plaintiffs' Fourth Amended Complaint here does not depend on the Florida no-fault statute.  Rather, § 627.736 is mentioned only once in the Fourth Amended Complaint, and not at all in the breach of contract claim.  Moreover, in stark contrast to those other actions, Plaintiffs here rely on federal law to establish their entitlement to sue for breach of contracts to which they are not parties, and federal law will have to be interpreted and applied in order to resolve Plaintiffs' claims.  *Compare*, *e.g.*,

-17-

Medicare beneficiary's right to recover against his or her insurance company.  *See* 42 U.S.C. § 1395y(b)(2)(B)(iv); 42 C.F.R. § 411.26(a).[16]  Plaintiffs will only be entitled to recovery if the same provisions also entitle MAOs, first-tier entities, and downstream entities (and, by extension, Plaintiffs as assignees) to be subrogated to their members' rights to recover against their insurance company.  But it is not clearly established whether MAOs, first-tier entities, and downstream entities may, in fact, exercise the same subrogation rights as the United States.  Indeed, 42 U.S.C. § 1395y and 42 C.F.R. § 411.26(a) make no reference to MAOs.  As a result, in adjudicating Plaintiffs' Count II, this Court will be required to interpret federal law—namely, 42 U.S.C. § 1395y and 42 C.F.R § 411.26(a)—to determine whether MAOs are allowed to subrogate claims against State Farm.  Plaintiffs' claim will, thus "be supported if the federal law is given one construction or effect and defeated if it is given another."  *Dunlap*, 381 F.3d at 1290 (internal quotation marks and citation omitted).

49.     Plaintiffs are not State Farm policyholders; rather, Plaintiffs assert that they are assignees of numerous MAOs, first-tier entities, and downstream entities, which allegedly paid for medical services provided to Medicare beneficiaries who were insured by State Farm.  Count II alleges that State Farm breached its contractual obligation "to pay its insureds' accident-

---

FAC ¶¶ 113-16 (alleging that "Defendant was contractually obligated to pay its insureds' accident-related medical expenses" and that, under the implementing regulations of the MSP Payer Act, Plaintiffs are entitled to sue for such a breach) *with MSPA Claims 1, LLC v, Allstate Prop. & Cas. Ins. Co.*, 2016 WL 4370078, at *2, 4 (S.D. Fla. June 30, 2016) (finding no federal jurisdiction where "[a]ll four counts recite, identically, that 'Defendant failed and/or refused to make complete payments of the No-fault benefits as required by Section 627.736, Florida Statutes" and the complaint did not "even hint that it [was] initiating its claim under federal law"); *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 2016 WL 3751481, at *3 (S.D. Fla. July 14, 2016) ("Plaintiff alleges that its right to reimbursement is based on Florida Statute § 627.736.").

[16] 42 C.F.R. § 411.26(a) provides that "[w]ith respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer."

related medical expenses" when it "failed or refused to appropriately reimburse the MSP Plaintiffs' Assignors and Class Members for [insureds'/Enrollees'] accident-related medical expenses." FAC ¶¶ 113-14. Plaintiffs go on to state that the regulations implementing 42 U.S.C. § 1395y—namely, 42 C.F.R. § 411.26—give the MAOs, first-tier entities, and downstream entities the right to sue on the policyholder's behalf to recover payments made by the MAOs, first-tier entities, and downstream entities, which State Farm was contractually obligated to make. *Id.* ¶ 113-15. Citing 42 C.F.R. § 411.26, Count II concludes that, "[u]nder applicable law, the MSP Plaintiffs' Assignors and Class Members are permitted to subrogate their Enrollees' right of action against" State Farm. *Id.* ¶ 113. Thus, Plaintiffs' entitlement to pursue—let alone recover on—Count II hinges on the application and interpretation of the federal Medicare Secondary Payer Act and its implementing regulations.

50. Indeed, in order to recover from State Farm under Count II, Plaintiffs must demonstrate that, among other things, (i) the MSP Act required State Farm to reimburse Medicare (as a primary payer) for the payments allegedly made on behalf of State Farm insureds by MAOs, first-tier entities, downstream entities, or their assignors; and (ii) the MSP Act permits MAOs, first-tier entities, and downstream entities to collect, in the place of State Farm insureds, the reimbursement owed by State Farm to Medicare. In sum, Plaintiffs' ability to recover under Count II will necessarily depend on the Court's application and interpretation of the MSP Act and its implementing regulations and, thus, this Count raises a federal question.

51.     Because Count I is expressly created by federal law and Count II arises under and depends on resolution of a substantial question of federal law,[17] this Court has federal question jurisdiction to hear those claims.

## PROCEDURAL REQUIREMENTS
## AND TIMELINESS OF REMOVAL

52.     Removal of this case to this Court on the basis of CAFA and federal question jurisdiction is timely and permissible.

53.     28 U.S.C. § 1453(b) makes clear that "the 1-year limitation [on removing diversity cases to a U.S. district court] under section 1446(c)(1)" does not apply to class actions. 28 U.S.C. § 1453(b).  Rather, "under CAFA, class actions may be removed at *any* point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable."  *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014) (citation omitted; emphasis in original).

54.     The policy underlying this procedure is sound:  "Any other reading of §§ 1332 and 1453 would thwart clear congressional intent by permitting plaintiffs to evade federal jurisdiction through clever gamesmanship: filing an individual complaint in state court, waiting a year, then transforming the original complaint into a class action by amendment, when it would

---

[17] Even *if* the Court were to conclude that Court II does not necessarily involve substantial questions of federal law, the Court has supplemental jurisdiction over that count because all of Plaintiffs' claims arise from State Farm's alleged failure to reimburse Plaintiffs for the conditional payments they made for the accident-related medical expenses of Medicare Part C beneficiaries, who were enrolled in Medicare Advantage plans (offered or managed by Plaintiffs) and also insured by State Farm.  Accordingly, Count II is "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367.

be too late for a defendant, now facing a class action, to file a notice of removal." *Reece*, 760 F.3d at 776.

55.     Applying that policy to this case, removal under CAFA is appropriate.  Indeed, this case was originally filed in County Court (the jurisdiction of which extends to disputes involving $15,000 or less), seeking only individual relief and such a negligible amount of damages that invoking federal jurisdiction would have been uneconomical and impracticable. And, as discussed above, the intermediate class-action complaints were not removable. *See supra* ¶¶ 8-9.  With the filing of the Fourth Amended Complaint, the case has since been drastically transformed into a broad putative class action with substantially increased exposure that is now a CAFA-caliber class action.

56.     Accordingly, under the provisions of CAFA, this removal was timely effected within 30 days of Plaintiffs' filing of the Fourth Amended Complaint, which rendered this action removable.

57.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon State Farm are attached hereto as Composite Exhibit A.

58.     Contemporaneously with the filing of this Notice of Removal, written notice has been served upon the Plaintiffs through their counsel of record and a copy of this Notice of Removal has been filed with the Circuit Court for Miami-Dade County, Florida.

### RESERVATION OF DEFENSES

59.     As of the filing of this Notice of Removal, no further proceedings have been heard in the state court.

60.     Nothing in this Notice of Removal shall be interpreted as a relinquishment of State Farm's right to assert any defense or affirmative matter.

61.     State Farm reserves the right to amend this Notice of Removal.

Dated:  August 3, 2018.

Respectfully submitted,

 /s/  Benjamine Reid
Benjamine Reid (Fla. Bar. No. 183522)
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida  33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055
Email:  breid@carltonfields.com

and

D. Matthew Allen (Fla. Bar. No. 866326)
Florida Bar No. 866326
CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three
at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133
Email:  mallen@carltonfields.com

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Notice of Removal was filed on August 3, 2018 with the Clerk of Court by using the CM/ECF system, which system served all counsel or parties of record, and that a true and correct copy of the foregoing was served via electronic mail and by U.S. Mail, first-class postage prepaid, to all counsel or parties on the Service List below.

/s/  *Benjamine Reid*

## <u>SERVICE LIST</u>

Andrés Riveo
arivero@riveromestre.com
Jorge A. Mestre
jmestre@riveromestre.com
Alan H. Rolnick
arolnick@riveromestre.com
Charles E. Whorton
cwhorton@riveromestre.com
Kingsley C. Nwamah
knwamah@riveromestre.com
David L. DaPonte
ddaponte@riveromestre.com
RIVERO MESTRE LLP
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

*Attorney for Plaintiffs*

115196911.9